# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 5:19 CR 00511-001 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | JUDGE JAMES S GWIN |
| vs. | ) | |
| | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| LANTY CARR, | ) | |
| Defendant. | ) | |

Now comes the Defendant, Lanty Carr, by and through undersigned Counsel, and respectfully requests this Honorable Court consider the attached Memorandum in imposing judgment and sentence.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*/s/ J. Reid Yoder*
J. Reid Yoder (0076587)
209 South Main Street, Third Floor
Akron, Ohio 44308
Telephone:  330.762.7477
Facsimile:  330.762.8059
ryoder@dpylaw.com

*Attorney for Defendant*

# MEMORANDUM

## I. PERSONAL HISTORY

Mr. Carr was born and raised in a small country town in West Virginia, where he lived with his two parents and sister and, in his youth, worked on the family farm. West Virginia is also where he worked construction with his father for over thirty years. Currently, Mr. Carr is married and has four children. He is the financial provider for his youngest son, who is presently a junior at West Virginia University, and for his 16-year-old daughter, who is in high school. Mr. Carr also has numerous grandchildren. (See Attached Exhibit A).

In 2000, Mr. Carr's wife tragically experienced a chemical reaction to the flu vaccine which caused her to have a serious stroke, which in turn has rendered her disabled and requiring around-the-clock care. Thereafter, in 2010, Mr. Carr's father passed away, leaving him and his sister as the sole caretakers for their ailing mother—who herself has recently been diagnosed with chronic obstructive pulmonary disease (COPD) and placed on oxygen. (See Attached Exhibit B). Thus, in addition to being the financial provider for his children, Mr. Carr also provides critical care and financial support for his wife and mother. Id.; (See Attached Exhibit C).

Since September 2019, Mr. Carr has been employed with Appalachian Stream Restoration, LLC, located in West Virginia, where he makes $41.00 per hour as a heavy equipment operator. Since his arrest, he has been trying to work as many hours as he can in order to save as much money as possible for his family's care while he is serving a period of imprisonment for the instant case. He is the sole breadwinner of his family. Mr. Carr deeply regrets his actions in this case and seeks to take full responsibility for them so that he may continue to provide and care for his family. He also yearns to once again exemplify an upstanding member of society.

II. **STATEMENT OF THE CASE**

Mr. Carr was arrested on May 31, 2019, after law enforcement conducted a traffic stop and probable cause search of his vehicle. During the search, officers found approximately 5.5 ounces of methamphetamine in a cooler in the backseat and several firearms located in the center console. Mr. Carr admitted that the firearms were his. Thereafter, Mr. Carr was charged with having committed the offense of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(b). Mr. Carr accepted responsibility for his actions by entering a guilty plea to Count 1 of the one-count Indictment on October 7, 2019. He has fully admitted his guilt and deeply regrets his actions.

III. **LAW AND ARGUMENT**

    A. **The Current State of Sentencing Law in the Wake of *United States v. Booker***

Sentencing procedure changed fundamentally in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Whereas previously the Federal Sentencing Guidelines were essentially mandatory in nature, today they are "effectively advisory" in all cases. *Id*. at 245. Consequently, it is required that district courts impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing pursuant to 18 U.S.C. §3553(a)(2). *See United States v. Foreman*, 436 F.3d 638, 644 n.1 (6" Cir. 2006) ("It is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a 'sentence, sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2).")

Moreover, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court made clear that district courts are to consider all of the sentencing criteria set forth in § 3553 in sentencing. The procedure for considering the sentencing criteria as delineated by the Court in *Gall* is as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting

point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Id.* at 596-597; *see also United States v. Gossman*, 513 F.3d 592, 596 (6" Cir. 2008) ("*Gall* shows that the sentencing process involves an exercise in judgment, not a mathematical proof..."). Significantly, the "sufficient but not greater than necessary" standard of § 3553 is not merely a guideline but an upper limit on the sentence that may be imposed by a Court.

### B. Guideline Calculations

According to the Pre-Sentence Report, Mr. Carr's Base Offense Level is 30. The parties anticipate a two-level increase since a firearm was possessed, pursuant to U.S.S.G. §2D1.1(b)(1), for an Adjusted Offense Level of 32. The parties also anticipate a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a), and a one-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(b) for timely notifying authorities of his intent to enter a plea of guilty, for a Total Offense Level of 29. Finally, the parties also anticipate a criminal history score of 0 resulting in a Criminal History Category I, for an advisory guideline range of 87 to 108 months prior to any other adjustments.

### C. Application of the Statutory Sentencing Criteria

#### i. §3553(a)(1) –- Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The circumstances under which the offense occurred should never reoccur. Mr. Carr recognizes the seriousness and wrongfulness of the offense and yearns to take full responsibility for his actions so

4

that he may quickly return to providing for his family and for his disabled wife's care—the continuance of which relies substantially on his financial support. It is also worth noting that, other than a petit larceny conviction which occurred over twenty-three years ago, Mr. Carr has never had a single criminal conviction. Thus, in consideration of Mr. Carr's ready acceptance of responsibility and scant criminal history, it is requested that this Court consider a downward departure from the guidelines in this matter.

### ii. U.S.S.G. §5C1.2 — Safety Valve Exception

Section 5C1.2 of the Sentencing Guidelines, pursuant to 18 U.S.C. §3553(f)(1-5), allows for a limitation on the applicability of statutory minimums in the case of an offense under 21 U.S.C. § 841, provided that five criteria are satisfied: (1) "the defendant does not have more than 1 criminal history point[;]" (2) "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;" (3) the offense did not result in death or serious bodily injury to any person;" (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise[;]" and (5) "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense[.]" U.S.S.G. §5C1.2 (a)(1-5). Further, a defendant has the burden "to prove he meets the five factors for relief by a preponderance of the evidence." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013).

In the first place and to repeat, Mr. Carr's criminal history is scant. His sole criminal conviction was for petit larceny almost 24 years ago. Indeed, Mr. Carr has zero criminal history points, and thus is below the one-point threshold delineated by the first criterion. As for the second, Mr. Carr did not possession the firearms "in connection with the offense" as required by §5C1.2.

"[A] defendant may constructively conspire to 'possess' a weapon for purposes of a sentence enhancement, while not actually possessing the same weapon 'in connection with the offense' such as to

5

preclude application of the safety valve. *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1186 (10th Cir. 2004); See also *United States v. Bolka*, 355 F.3d 909 (6th Cir. 2004) ("conduct warranting enhancement of [an] offense based upon possession of a dangerous weapon does not necessarily foreclose application of safety valve reduction[.]"). In expounding on this distinction, the Tenth Circuit employed an apt analogy:

> The morning star is the same celestial body as the evening star. Yet we refer to this body-actually the planet Venus-by different names in different contexts. Similarly, in this case the district court referred to possession of a gun for one purpose in a sentence enhancement and for a different purpose for a sentence reduction, all the while referring to the same weapon.

Id.

The key distinction here is illumined when one compares the passive voice "was possessed" of § 2D1.1(b)(1), and the active voice of §5C1.2(a)(2) requiring that the defendant "possess a firearm in connection with the offense." U.S.S.G. §5C1.2(a)(2). Indeed, as the D.C. Circuit has noted, the language of §5C1.2(a)(2) connotes an active possession. *In re Sealed Case (Sentencing Guidelines' Safety Valve)*, 105 F.3d 1460, 1463 (D.C. Cir. 1997). As such, "[t]he distinctions between the language of §2D1.1(b)(1), requiring mere proximity to the weapon, and §5C1.2(a)(2), requiring active possession, make clear that *a closer degree of connection is necessary to preclude application of the safety valve than is necessary for a finding of possession under §2D1.1(b)(1)*." *Id*. at 1187. (Emphasis added).

Thus, to rephrase, the showing of actual possession as required by §5C1.2 necessarily involves a closer degree of connection than mere proximity to the weapon. The United States Supreme Court, citing Black's Law Dictionary, defined "actual possession" as "[existing] when a person has direct physical control over a thing." *Henderson v. United States*, 575 U.S. 622, 135 S. Ct. 1780, 1784, 191 L. Ed. 2D 874 (2015); See Black's Law Dictionary 1047 (5th ed. 1979). While the Supreme Court did not expound on the meaning of "direct physical control," the Sixth Circuit has held that a defendant has "direct physical control," and therefore, is in actual possession of a weapon, when that weapon is

6

physically "on [the defendant's] person when the police [arrest] him." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009).

Nevertheless, the phrase has yet to be fleshed out in the lower courts since *Henderson.* As such, it will here be helpful to first distinguish actual possession from what it is not—constructive possession. "Constructive possession of a firearm exists when a defendant does not have actual possession, but instead knowingly has the power or right and intention to exercise dominion and control over the firearm. *Mere presence near a firearm is not enough to establish constructive possession*." *United States v. Varner*, 789 F. App'x 144, 147 (11th Cir. 2019). (Emphasis added).

In the present matter, the firearms were found by the officers in the vehicle's center console. Therefore, given that at the time of his arrest Mr. Carr was present near the firearms and given that he was aware of their presence in the vehicle, it meant that he "knowingly [had] the power to exercise dominion and control" over them. As such, Mr. Carr could be said to have been in constructive possession of the firearms, thus qualifying him for an enhancement under § 2D1.1(b)(1). Nevertheless, as noted by the Eleventh Circuit, his "mere presence near" the firearms is alone insufficient even to establish constructive possession, let alone actual possession—a showing of which by the government requires meeting a much higher threshold than for constructive possession. *Id*. Yet, significantly, for the purposes of qualifying for the safety valve exception under §5C1.2, the threshold that must be met by the government is even higher still.

To reiterate, the language of §5C1.2 connotes not merely an "actual possession" but an "active possession." *In re Sealed Case (Sentencing Guidelines' Safety Valve)*, 105 F.3d 1460, 1463 (D.C. Cir. 1997). The government must show not only that the defendant possessed the firearm, but that he possessed it "in connection with the offense." U.S.S.G. §5C1.2(a)(2) Thus, in the context of meeting the safety valve exception, actual possession—defined as having "direct physical control over a thing"—must necessarily also involve, a literal physical control. Remember, a showing of "mere presence near a

7

firearm" by itself is not enough to even establish constructive possession. *United States v. Varner*, 789 F. App'x 144, 147 (11th Cir. 2019). Yet, we have little more than Mr. Carr's mere presence near firearms during his arrest in this case. The additional fact that he admitted ownership of the firearms is what allows the government to meet the threshold for constructive possession and to thus qualify for an enhancement under § 2D1.1, but absent more, these facts are not enough to constitute active possession in connection with the offense—a higher threshold—as required under §5C1.2. Therefore, Mr. Carr satisfies the second criterion of the safety valve exception.

As to criteria three through five, Mr. Carr never once behaved violently concerning the offense, nor was anyone else harmed as a result. Additionally, he was not acting as an "organizer, leader, manager, or supervisor of others in the offense"—he acted alone. Finally, he has unequivocally accepted full responsibility for his actions in accordance with subsection (f)(5) of this section. Accordingly, Mr. Carr qualifies for the safety valve exception in this matter, and it is respectfully requested that this Honorable Court impose a sentence without regard to the otherwise applicable statutory minimums.

### iii. U.S.S.G. §5H1.6 — Departure Based on Loss of Care-taking or Financial Support.

The Application Note for §5H1.6 of the Sentencing Guidelines provides general circumstances for a court to consider when assessing whether a departure based on a person's family ties and responsibilities is warranted. Though non-exhaustive, the circumstances for a court's consideration include: "[t]he involvement in the offense, if any, of members of the defendant's family[,]" and "[t]he danger, if any, to members of the defendant's family as a result of the offense." U.S.S.G. §5H1.6 Note 1.(A)(ii-iii).

The Note further stipulates that a court must also consider: whether the "defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential care-taking, or essential financial support, to the defendant's family." U.S.S.G. §5H1.6 Note

8

1.(B)(i). A departure may also be warranted when said departure "effectively will address the loss of care-taking or financial support." U.S.S.G. §5H1.6 Note 1.(B)(iv).

In the present case, Mr. Carr's family had zero involvement in the offense to which he has pled guilty. As aforementioned, his family relies heavily on his financial support for their well-being. In addition to providing support for his children and numerous grandchildren, Mr. Carr also cares for his elderly mother and his severely-disabled wife—for whom his ability to provide for financially and to care for physically is vital. (See Attached Exhibits A, B and C). Furthermore, not only would the loss of Mr. Carr's financial support represent a critical blow for his family, but that financial loss would be multiplied by the additional costs to those members.

Whereas the task of taking care of their ailing mother is currently shared exclusively by both Mr. Carr and Ms. McCourt without Mr. Carr, the responsibility would fall to Ms. McCourt to assume the role of sole caretaker. This would put immense stress on her as she is single and already has her own household to provide and care for. (See Attached Exhibit B). Such an eventuality would likely require Ms. McCourt to miss more work, which would result in her means of living decreasing "drastically." Id.

That is as yet to say nothing of the effect a potential lengthy period of incarceration for Mr. Carr would have on his wife, Carol, and kids, Spencer and Jadan. Given his wife Carol's disability, she is unable to work and relies on Mr. Carr to provide for her financially. (See Attached Exhibit A). Though she currently receives disability benefits, they are not enough to live on, as Mr. Carr also financially provides for Spencer, who is currently attending West Virginia University, and Jadan, who is a 16 year-old high school junior. Id.

Thus, a lengthy sentence in this case would have profound adverse consequences for Mr. Carr's family. As characterized by his wife, Carol, he "is the person everyone goes to" for help. Id. In view of his family's deep reliance on his support, and thus, in consideration of the substantial adverse effect a sentence imposed within the guideline range would have on Mr. Carr's family, it is requested that this

9

Court consider a downward departure from the guidelines under U.S.S.G. §5H1.6 .

## IV. CONCLUSION

Mr. Carr regrets immensely the wrongfulness of his actions in this matter. Indeed, he regrets most of all that his actions will have an immense, adverse effect on his family. As the sole breadwinner of his family, one that includes numerous children and grandchildren, an elderly, ailing mother, and a severely-disabled wife who requires around-the-clock care, Mr. Carr's incarceration will prove a substantial detriment to many who greatly rely on his financial support. As such, and also in light of his scant criminal history and his qualifying for the safety valve exception, it is respectfully requested that this Honorable Court consider a downward departure from the sentencing guideline range made without regard to applicable statutory minimums in accordance with U.S.S.G. §5C1.2, §5H1.6, and 18 U.S.C. §3553 (a)(1); (f)(1)-(5).

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*/s/ J. Reid Yoder*
J. Reid Yoder (0076587)
209 South Main Street, Third Floor
Akron, Ohio 44308
Telephone:   330.762.7477
Facsimile:   330.762.8059
ryoder@dpylaw.com

*Attorney for Defendant*

## CERTIFICATE OF SERIVICE

I hereby certify that on February 26, 2020 a copy of the forgoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>*/s/ J. Reid Yoder*
>J. Reid Yoder (0076587)